# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| GASTROCARE, PC, | ) |
|     Plaintiff, | ) |
| v. | )    Case Number: 7:16-cv-01286-JHE |
| TRXSERVICES, LLC d/b/a/ TRANSACTION SERVICES,[1] | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION[2]

Plaintiff GastroCare, PC ("GastroCare") initiated this action against Defendant TrxServices d/b/a Transaction Services ("TRX") alleging state law claims for breach of contract, unjust enrichment, and fraud arising out of a business relationship whereby TRX provided GastroCare with credit/debit card transaction services. (Doc. 1). Thereafter, TRX filed a motion to dismiss for lack of subject-matter jurisdiction pursuant Federal Rule of Civil Procedure 12(b)(1) contending the amount in controversy is not met and, alternatively, for forum non-conveniens based on a forum selection clause. (Doc. 10). GastroCare filed a response in opposition to the motion to dismiss, (doc. 13), TRX filed a reply brief, (doc. 14), and GastroCare has filed a sur-reply, (docs. 19 & 20).

Awaiting a ruling on the motion to dismiss, GastroCare filed a motion to amend its complaint, requesting to add "individuals involved in the conduct made the basis of this lawsuit"

---

[1] Any fictitious defendants named in the state court complaint are not recognized in federal court.

[2] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 15).

as defendants. (Doc. 21). Specifically, GastroCare moves to add David Jennings and David Leppek as defendants, alleging "David Leppek is the President of TRX and is responsible for the actions of David Jennings and others whose wrongful actions were carried out in the line and scope of their duties with TRX." (Doc. 21 at 4-5). There are no other new allegations in the proposed amended complaint. (*See id.* at 4-9). TRX opposed the motion to amend, (doc. 25), and GastroCare replied, (doc. 26).

The court will "freely grant" a motion to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The court's discretion in deciding whether to grant or deny a motion to amend, however, is not unlimited. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1110 (11th Cir. 1996) (citing *Espey v. Wainwright*, 734 F.2d 748 (11th Cir. 1984); *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594 (5th Cir. 1981)). A district court should allow a plaintiff to amend unless there is a "substantial countervailing reason." *Id.* Such "substantial countervailing reasons" include: undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility of the amendment. *Id.* (citing *Nolin v. Douglas Cnty.*, 903 F.2d 1546, 1550 (11th Cir. 1990)).

The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive such scrutiny, the amendment is futile and leave to amend is properly denied. *B.D. Stephenson Trucking LLC v. Riverbrooke Capital Partners, LLC,* No. 06-0343-WS-M, 2006 WL 2772673, at *6 (S.D. Ala. Sept. 26, 2006) (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)); *see also Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996). As explained below, because allowing the proposed amended would be futile, the motion to amend, (doc. 21), is **DENIED**.

Whether proceeding under the original complaint or the proposed amended complaint,

GastroCare cannot prove the amount in controversy is met, and the motion to dismiss (doc. 10), is due to be **GRANTED**.

## I. Standard of Review

Federal courts are courts of limited jurisdiction, with the power to hear only cases authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), a party may move the court to dismiss a case if the court lacks jurisdiction over the subject matter of the case. Even when a party does not assert a jurisdictional challenge, "a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir.2005). Simply put, a federal court is powerless to act beyond its constitutional or statutory grant of subject-matter jurisdiction. *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir.2001). Regardless of how the issue came before the court, a plaintiff, as the party invoking jurisdiction, bears the burden of establishing the court's subject-matter jurisdiction. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994).

A challenge to a court's subject matter jurisdiction may come by way of a facial attack or a factual attack:

> Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.

*Garcia v. Copenhaver, Bell & Assocs., M.D.s*, 104 F.3d 1256, 1261 (11th Cir.1997) (citations omitted).

Because the TRX relies on documents which are outside of the pleadings, (*see* docs. 10-1 & 14-1), its challenge to the court's subject-matter jurisdiction is a factual attack. Under such an

attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990) (per curiam) (citation omitted). Indeed, "[i]n the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir.2002); *Motta v. United States*, 717 F.3d 840, 844 (11th Cir.2013). However, a court may only find that it lacks subject matter jurisdiction "if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir.2003) (citations omitted). When a jurisdictional challenge implicates the merits of the plaintiff's claim, the court must "find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Id.* (citations omitted). This ensures "a greater level of protection for the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place great restrictions on the district court's discretion." *Id.* (citations omitted) (alterations in original).

## II. Factual Background

According to the complaint, in January 2013, David Jennings of TRX approached someone with GastroCare about providing its medical practice with credit/debit card transactions services. (Doc. 1 at ¶5). GastroCare contends TRX provided it with quotations and applications stating GastroCare would be charged ten cents ($0.10) per transaction plus a fee of thirty base points (0.3%), (*see* doc. 10-1 at 7) and, through its principals, GastroCare agreed for TRX to provide these services to GastroCare and another related entity. (*Id.* at ¶¶6-7). GastroCare further alleges TRX has provided these services since early April 2013, and that it has since discovered TRX has been deducting thirty percent (30%) instead of thirty base points (0.3%). (*Id.* at ¶¶8-9). The

4

complaint states GastroCare requested TRX return all of these funds, but TRX refused to do so. (*Id.* at ¶10). GastroCare requests $72,902.96, it claims TRX wrongfully deducted over a period of thirty-eight months (April 2013 to June 2016), pre-judgment interests ($6,943.99), and unspecified punitive damages for fraud. (*Id.* at ¶12-14).

According to an affidavit submitted by David Leppek, who has been employed by TRX since February 2010, and who is the current president of TRX, GastroCare entered into a Merchant Application and Agreement with TRX on or about March 18, 2013 (the "Merchant Agreement"). (Doc. 10-1 at ¶2, 6-8, 10-13). The Merchant Application specifically referenced and incorporated terms and conditions, including a limitation of liability as follows:

> For purposes of this Agreement, Bank and ISO are collectively referred to hereinafter as the "Bank." The Bank and Merchant agree as follows:
>
> . . . .
>
> 5:11 <u>Limitation of Liability</u>. Bank's liability with respect to any Card Transaction may not exceed the amount of the Sales Draft in connection with that Transaction less any applicable fees and charges. Bank is not liable for any incidental or consequential damages whatsoever. **Merchant waives all claims against Bank for any loss, claim, demand, penalty, action, delay, cost or expense (including reasonable attorneys' fees) of any kind unless Merchant provides written notice to Bank of the occurrence that gave rise to the alleged liability within 30 days after Merchant knew or should have known of the occurrence.** Merchant will indemnify and hold Bank harmless from any claim relating to any Sales Draft paid for by Bank as may be made by anyone by way of defense, dispute, offset, counterclaim or affirmative action, or for any damages of or losses that Bank may incur as a result of Merchant's breach of this Agreement. Merchant will reimburse Bank for all expenses and costs, including attorneys' fees, with regard thereto.

(*Id.* at 7, 10, 13) (emphasis added).

The terms and conditions also set forth the governing law, jurisdiction, and venue for any claims GastroCare or TRX would make concerning their business relationship. (*See* doc. 10-1 at 6-8, 10-13). Specifically, the terms and conditions provided as follows:

5

For purposes of this Agreement, Bank and ISO are collectively referred to hereinafter as the "Bank." The Bank and Merchant agree as follows:

. . . .

5.14 <u>Choice of Law; Jurisdiction</u>. Virginia law governs this Agreement. Any claims or cause of action arising out of this agreement against the Bank must be initiated and maintained exclusively in the state or federal courts located in James City County, Virginia.

(*Id.* at 10, 13).

According to the Leppek Affidavit, in March 2014, TRX switched banking providers and the terms and conditions were modified,[3] which the Merchant Agreement expressly allowed.

---

[3] In relevant part, the new terms and conditions provide as follows:

6.1 LIMITATION OF LIABILITY
A. Limitation of Liability. Any liability of Bank under this Agreement whether to Merchant or to any other party, whatever the basis of liability, shall not exceed in the aggregate the difference between: (i) the amount of fees paid by Merchant to Bank during the month in which the transaction out of which the liability arose occurred; and (ii) assessments, Chargebacks, and any offsets authorized under this Agreement against such fees which arose during such month. In the event more than one month was involved, the aggregate amount of Bank's liability shall not exceed the lowest amount determined in accord with the foregoing calculation for any one-month involved. In no event will Bank, nor its officers, agents, directors, or employees be liable for any indirect, special, or consequential damages including loss profits, revenues and business opportunities. IN NO EVENT SHALL BANK, OR ANY OF ITS AFFILIATES, DIRECTORS, OFFICERS, EMPLOYEES, AGENTS OR SUBCONTRACTORS BE LIABLE UNDER ANY THEORY OF TORT, CONTRACT STRICT LIABILITY OR OTHER LEGAL THEORY FOR LOST PROFITS, LOST REVENUES, LOST BUSINESS OPPORTUNITIES, EXEMPLARY, PUNITIVE, SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES, EACH OF WHICH IS HEREBY EXCLUDED BY AGREEMENT OF THE PARTIES, REGARDLESS OF WHETHER SUCH DAMAGES WERE FORESEEABLE OR WHETHER ANY PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. MERCHANT ACKNOWLEDGES AND AGREES THAT PAYMENT OF ANY EARLY TERMINATION FEE AS PROVIDED IN ARTICLE V, SECTION 5.02.C ABOVE SHALL NOT BE PROHIBITED BY THIS SECTION.

(Doc. 10-1 at 22).

(Doc. 10-1 at ¶7, 13, 15-23). Leppek further stated that TRX provided GastroCare with the new set of terms and conditions, which included a limited liability provision and a forum selection clause, through its web-portal system and it was agreed to by one of GastroCare's agents by logging into the system and acknowledging he or she had received and agreed to the new set of terms and conditions. (*Id.* at ¶7).

In response, GastroCare contends that, although it entered into an agreement with TRX, it is not bound by the contractual provisions TRX cites. (Doc. 13 at 2-14). First, GastroCare argues the terms and conditions are not validly incorporated into the Merchant Application it signed and that it did not receive a copy of any such terms. (*Id.* at 5-6, doc. 13-1 at ¶4). Second, GastroCare contends TRX is not a party to the Merchant Agreement, but it is rather an agreement between a Merchant and a third-party bank. (Doc. 13 at 6-7). Third, GastroCare argues that the portion of the Leppek Affidavit referencing the March 2014 modifications and web-portal agreement is "unsubstantiated hearsay" and that it does not use the web-portal. (*Id.* at 7-8, doc. 13-1 at ¶5).

---

> 7.2 GENERAL PROVISIONS
>
> . . . .
>
> B. Governing Law and Venue. Bank, Merchant and Guarantor(s) agree that all performances and transactions under this Agreement will be deemed to have occurred in California and that Merchant's entry into and performance of this Agreement will be deemed to be the transaction of business within the State of California. This Agreement will be governed by California law, without regard to its conflicts-of-law principles, and applicable federal law. Bank, Merchant and Guarantor(s) hereby consent to the exclusive jurisdiction and venue for any action relating to the subject matter of this Agreement in Sonoma County, California and/or California Superior Court in Sonoma County, California and/or United States District Court for the Northern District of California. The parties consent to the jurisdiction of such courts and agree that process may be served in the manner allowed by the laws of the State of California or United States federal law.

(*Id.* at 23).

Lastly, GastroCare contends TRX, as the proponent of the contracts at issue, has not met its burden showing their applicability and effect. (Doc 13 at 8).

In its reply, TRX addresses these arguments and offers additional evidence, including a second affidavit from David Leppek. (Docs. 14 & 14-1). Notably, TRX points back to the Merchant Application signed by GastroCare representatives. (*See* doc. 10-1 at 6-7). The three-page application specifically references GastroCare as "Merchant," TRX as "ISO," and Chesapeake Bank as "Bank." (*Id.*). The Merchant Application also includes a Merchant Acceptance provision that expressly references the attached terms and conditions. This provision states as follows:

> By executing this Merchant Agreement on behalf of the Merchant described above ("the Merchant"), the undersigned individual(s):
>
> . . .
>
> (iv) agree, on behalf of the Merchant and in the event this Merchant Application is accepted and executed by Bank, **to all of the terms and conditions set forth in the Merchant Agreement attached to this Merchant Application** and Fee Schedule above.

(*Id.* at 7). The Merchant Acceptance provision required additional signatures. A.B. Reddy and Nirish Shah signed the Merchant Acceptance provision for GastroCare, and David Leppek signed for TRX. (*Id.*).

Additionally, Leppek's second affidavit states that TRX provided GastroCare with the terms and conditions in three different ways. First, Leppek states the terms and conditions are included in TRX"s "Welcome Package," which ships with its credit card terminals. (Doc. 14-1 at ¶3). He also states the terms and conditions are provided to sales agents (such as David Jennings), so they can provide the merchant a copy in person. (*Id.*). Finally, the affidavit states TRX provides a copy of the terms and conditions through its Web Portal Program, and GastroCare logged into

its Web Portal and received a copy of the terms and conditions on March 26, 2013. (*Id.* at ¶3, 4).

In its sur-reply, GastroCare offers two arguments. (Doc. 19). It's first argument is that TRX has not demonstrated the existence of a contract based on *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325 (11th Cir. 2016). (*Id.* at 2-5). Second, based on an affidavit provided by Renuka Reddy, an employee of GastroCare, GastroCare disputes it ever agreed to be bound to the terms and conditions of the Merchant Agreement because it does not use the Web Portal. (*Id.* at 5-6).

## III. Analysis

TRX argues GastroCare entered into a Merchant Application and Agreement with TRX, and that the agreement included terms and conditions limiting liability and setting the governing law, jurisdiction, and venue. (*See* docs. 10 & 14). Specifically, TRX argues this action is due to be dismissed because the limitation of liability provision prevents GastroCare from meeting the amount in controversy requirement for this court to have jurisdiction. (*See id.*). GastroCare concedes it agreed that TRX would provide credit/debit card transaction services for its medical practice, (*see* doc. 1 at ¶¶5-7), but argues, *inter alia*, it is not bound by certain terms and conditions, including the limitation of liability and forum selection provisions, because (1) the terms and conditions are not validly incorporated into the agreement; (2) TRX is not a party to the agreement; (3) it does not use the web-portal and could not have agreed to the terms and conditions. (*See* docs. 10 & 19).

The evidence before the court establishes that GastroCare representatives physically signed a Merchant Application for TRX's services in February 2013. (Doc. 10-1 at 6-7). Specifically, GastroCare representatives signed the Merchant Application in three places, including a provision titled Merchant Acceptance, where GastroCare agreed as follows:

9

> By executing this Merchant Agreement on behalf of the merchant [GastroCare] described above . . . . (iv) **agree**, on behalf of the Merchant and in the event this Merchant Application is accept and executed by the Bank, **to all the terms and conditions set forth in the Merchant Agreement attached to this Merchant Application** and the Fee Schedule set forth above . . . .

(*Id.* at 7) (emphasis added). Accordingly, GastroCare cannot reasonably argue it was unaware the agreement incorporated terms and conditions found in another document. To the contrary, by signing this provision, GastroCare was put on notice that additional terms and conditions existed and would be incorporated into the contract. This express incorporation by reference put the onus on GastroCare to review those terms and conditions, and if GastroCare had not been provided the terms and conditions, it was GastroCare's responsibility to request a copy. *See Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1214–15 (11th Cir. 2011) (concluding that parties are bound to the terms and conditions when document containing such an agreement was incorporated by reference into the employment agreement). The terms and conditions were available to GastroCare through the web portal system and on TRX's website (https://trxservices.com/terms). (Doc. 14 at 2). Although GastroCare contends it did not utilize the web portal, TRX has provided business records establishing that on at least two occasions, someone using Renuka Reddy's credentials, logged onto the system, on March 20, 2014 (for 33 minutes) and March 21, 2014 (for 0 minutes). (Doc. 14-1 at 2, 6).

GastroCare's second argument, that TRX cannot enforce the limitation of liability (or any other) provision because TRX is not a party to the Merchant Agreement, is also unavailing as it is flatly contradicted by the evidence. Although the details of the relationship between TRX and the Bank are not completely detailed in the evidence, the evidence presented establishes that TRX was a party to the Merchant Agreement and could enforce the terms and conditions. "Transaction Services" and Chesapeake Bank" are printed in large letters at the top of the first page of the

Merchant Application GastroCare signed, and the bottom states "Transaction Services is a registered ISO. (Doc. 10-1 at 6). Additionally, the Merchant Acceptance provision provides for two signatures from the Merchant, a signature from the Bank, a signature from TRX. (Doc. 10-1 at 7). David Leppek signed this provision on behalf of TRX. (*Id.*).

The terms and conditions begin by expressly stating that the Bank and ISO are collectively referred to as "Bank" in the document. (*Id.*). The terms and conditions then further explain that "ISO and Bank may allocate their respective duties and obligations between themselves as they deem appropriate at their sole discretion, and ISO or Bank may jointly or individually assert or exercise the rights or remedies provided to the Bank hereunder." (*Id.*). Because three parties are involved in these agreements, these and similar agreements are often referred to as "tri-party agreements." *See e.g., Bus. Payment Sys., LLC v. BA Merchant Servs., LLC*, No. 3:06-cv-387-S, 2007 WL 2174724, *1 (W.D. Ky. July 25, 2007). Thus, under the limitation of liability provision, GastroCare waived "any and all claims against Bank [and TRX, the ISO,] for any loss, claim, demand, penalty, action, delay, cost or expense (including reasonable attorneys' fees) of any kind unless [GastroCare] provide[d] written notice to Bank [or TRX, the ISO,] of the occurrence that gave rise to the alleged liability within 30 days after [GastroCare] knew or should have known of the occurrence." (Doc. 10-1 at 13, ¶5.11).

Courts in Alabama, Virginia, and California[4] uphold contractual provisions limiting liability. *Fleming Farms v. Dixie Agriculture Supply*, 631 So. 2d 922 (Ala. 1994); *Environtech Corp. v. Halco Engineering, Inc.*, 234 Va. 583 (Va. 1988); *Wheeler v. Oppenheimer*, 295 P.2d 128 (Cal. App. 1956). The initial limitation of liability provision requires GastroCare to give written

---

[4] The parties entered into the contract in Alabama, and the two choice of law provisions that may apply invoke Virginia and California law.

notice of any loss or claim within thirty days after it knew or should have known of the occurrence.[5] (Doc. 10-1 at 13, ¶5.11). GastroCare admits receiving monthly billing statements, (doc. 13-1 at ¶5), and thus knew or should have known about thirty-eight months of overcharges – from April 2013 to June 2016. However, the initial limitation of liability provision limits GastroCare's potential recovery by requiring written notice of the claim within thirty days from when GastroCare knew or should have known of the claim (or facts giving rise to the claim). In this instance, GastroCare was on notice of any overcharges when it received its billing statement each month. The alleged overcharges should have been apparent to GastroCare as early as the end of April 2013, as GastroCare is alleging TRX deducted 30% instead of 0.3%. When applying the limitation of liability provision, the amount-in-controversy is substantially less than what is pled. Additionally, the amount-in-controversy is further reduced because TRX already provided GastroCare with an adjustment of $5,888.52, when it was made aware of the issue in June 2016, presumably representing the overcharges for the thirty days preceding the written notice. (*See* doc. 10 at 7).

It is also apparent that GastroCare cannot recover punitive damages for its fraud claim. "In ascertaining whether the amount in controversy is greater than $75,000, the court must consider a claim for punitive damages, 'unless it is apparent that such cannot be recovered.'" *Holman v. Montage Grp.*, 79 F. Supp. 2d 1328, 1330 (S.D. Ala. 1999) (quoting *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987)). In support of its fraud claim, GastroCare

---

[5] There are two limitations of liability provisions, one in the original terms and conditions (doc. 10-1 at 13, ¶5.11), and another in the March 2014 amendments (doc. 10-1 at 22, ¶6.1). It is unclear from the record whether the Bank or TRX properly notified GastroCare of the amended terms and conditions. (*See id.* at 13, ¶5.09). However, whether proceeding under the updated terms and conditions starting in March 2014 or continuing to proceed under the original terms and conditions, the amount-in-controversy does not come close to $75,000 or more.

alleges no wrongdoing other than being charged a higher rate than it was quoted and agreed to, (doc. 1 at ¶¶6, 7, 9 & doc. 21 at ¶¶7, 8, 11), and then generally averring the elements of a fraud claim, (doc. 1 at 4 & doc. 21 at 7-8). Assuming TRX charged GastroCare a higher rate than the parties agreed to, GastroCare admits receiving monthly billing statements and alleges no deficiency with those statements, thus negating any contention TRX was hiding anything from GastroCare related to the amount being charged for its services. Thus, GastroCare has not asserted a fraud claim under even the most stringent Rule 12(b)(6) and Rule 9(b) standard. Furthermore, in light of the limitation of liability provision, GastroCare points to nothing within the thirty-day period prior to giving TRX notice of its claim that would support a claim for fraud.

Furthermore, GastroCare's reliance on the Eleventh Circuit's opinion in *Bazemore v. Jefferson Capital Systems*, 827 F.3d 1325 (11th Cir. 2016), is misplaced. GastroCare points to *Bazemore*'s holding that the corporate declaration at issue was insufficient to establish the existence of a contract to support its position there is no contract in this case. (Doc. 19 at 2-3). Specifically, GastroCare contends there is no contract because (1) Leppeck's affidavit is insufficient because it contains no evidence of how GastroCare is alleged to have agreed to the terms and conditions; and (2) Leppeck's affidavit is insufficient when it states that term and conditions were sent as part of a welcome package because it lacks actual knowledge of receipt. (*Id.* at 3-4). The facts in *Bazemore* are distinguishable, and when comparing the set of facts here, GastroCare's logic does not hold. In *Bazemore*, the consumer plaintiff had applied for a credit card on the internet. 827 F.3d at 1327. The court considered whether the plaintiff consumer agreed to any terms and conditions in the course of doing so, holding that an affidavit from a third-party record maintainer that said the plaintiff consumer "accepted the terms governing her account and opened the account" without asserting he had any personal knowledge was insufficient evidence.

*Id.* at 1327, 1333-34. Here, there is no question as to how GastroCare agreed to the terms and conditions because TRX has provided the signed Merchant Application with a Merchant Acceptance provision expressly referencing terms and conditions. (Doc. 10-1 at 6-8). There are two physical signatures from GastroCare representatives establishing that GastroCare agreed to the Merchant Acceptance provision, which expressly referenced attached terms and conditions. The *Bazemore* analysis of insufficiencies is not necessary in this case.

There is nothing in GastroCare's proposed amended complaint – adding David Jennings and David Leppek as defendants – that would change this result. There are no allegations that would support holding either individual personally liable. There are no allegations that either individual was enriched or received any improper benefits. There are no allegations either individual was involved in suppressing or hiding anything from GastroCare. And, neither Jennings nor Leppek was a party to the contract at issue. Because allowing GastroCare to amend the complaint would be futile, the motion to amend, (doc. 21), is **DENIED**.

GastroCare has failed to establish that the amount in controversy exceeds $75,000, and, therefore, this court lacks subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. For that reason alone, this action is due to be dismissed to allow GastroCare to refile in the appropriate forum. Alternatively, even if GastroCare could establish that the amount in controversy is met, the mandatory forum selection clause in the terms and conditions would require this action to be filed elsewhere. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (holding that forum-selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."); *see also Alt. Marine Cost. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 586 (2013) (holding that a valid forum selection clause should be given controlling weight in all but the most exceptional circumstances).

## IV. Conclusion

Because GastroCare cannot establish the requisite amount in controversy and the proposed amendment would be futile, the motion to amend, (doc. 21), is **DENIED**, and the motion to dismiss, (doc. 10), is **GRANTED**. This action will be **DISMISSED** with leave to refile in the appropriate forum. A separate order will be entered.

DONE this 16th day of June, 2017.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE